Sherman Earl HAYS, et al.,
Plaintiffs-Appellants,

v.

NATIONAL ELECTRICAL CONTRACTORS ASSOCIATION, INC., et al.,
Defendants-Appellees.

No. 84–2842.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 8, 1985.

Decided Nov. 19, 1985.

Filed Feb. 6, 1986.

---

Alan S. Yee, Eric Weaver, Siegel, Friedman, Dickstein & Yee, Oakland, Cal., for plaintiffs-appellants.

Victoria Chin, Peter D. Nussbaum, Neyhart, Anderson, Nussbaum, Reilly & Freitas, San Francisco, Cal., for defendants-appellees.

Before CHAMBERS, TANG, and PREGERSON, Circuit Judges.

PREGERSON, Circuit Judge.

Sherman Hays and two other electricians ("the electricians") appeal the district court's grant of summary judgment finding that the International Brotherhood of Electrical Workers, Local 595 ("Local 595") did not breach its duty of fair representation to the electricians. We affirm the district court's decision.

## FACTS

The electricians, as members of Local 595, work under a Collective Bargaining Agreement ("Agreement") with the National Electrical Contractors Association ("NECA"). Article IV of the Agreement establishes a referral system for employment status. The electricians have been in Group I referral status, the highest priority group, for approximately 20 years. To be eligible for Group I, an applicant must, among other things, be a resident of the geographical area constituting the "normal construction labor market." Section 4.08 of the Agreement defines the term "normal construction labor market" as Alameda County "plus the commuting distance adjacent thereto, which includes the area from which the normal labor supply is secured." The Agreement contains no definition of the term "commuting distance adjacent thereto."

Pursuant to Article 4.17 of the Agreement, an Appeals Committee ("Committee") can make "final and binding" decisions regarding complaints concerning administration of the referral procedures. Additionally, the Committee is "authorized to issue procedural rules" but not any that "add to, subtract from, or modify any of the provisions" in the Agreement.

Beginning in 1976, a large construction project attracted numerous non-local electricians ("travelers") to Alameda County and the Locals in the area. In 1982, as the work began to decline, the members of Local 595, including the plaintiffs, became concerned that their ability to obtain jobs would be jeopardized by the travelers remaining in the area.

In October of 1982, the Committee adopted a definition of the term "commuting distance adjacent thereto" to mean the area contained in a 40-mile radius from Local 595's hiring hall. The subject of "grandfathering"—allowing the previous Group I union members to maintain that status by applying the rule prospectively—was considered and rejected by Local 595 as a potentially discriminatory labor practice. In November of 1982, and again in a newsletter in April 1983, Local 595 gave advance notice to all electricians that the rule would be implemented. In June of 1983, the radius rule was put into effect. As a result, many travelers failed to qualify for Group I status. The 40-mile radius rule, however, also excluded approximately 20 out of the 500 to 700 electricians previously classified in Group I status. Plaintiff Sherman Hays was reclassified from Group I into Group II in July 1983 when he returned to the hiring hall to obtain a new job. Plaintiffs Robert Richmond and James O. Schuknieht have not yet been reclassified, but will be once they leave their present jobs and return to the hiring hall for new jobs. All 3 plaintiffs live outside the radius.

In August 1983, Hays filed a charge with the Regional Director of the NLRB alleging unlawful labor practices by local 595. The Director refused to issue a complaint. The NLRB Office of Appeals denied Hays' appeal. In February 1984, the electricians brought suit in federal court alleging that Local 595 breached its duty of fair representation to the electricians in adopting and implementing the 40-mile radius rule. In November 1984, the district court granted summary judgment for Local 595 finding that it did not breach its duty of fair representation to the electricians. The Court also dismissed the remainder of the electricians' complaint that alleged discriminatory hiring hall practices.[1] On January 15, 1985, all claims asserted against defendants, other than Local 595, were voluntarily dismissed by the electricians. On February 7, 1985, the electricians timely filed an appeal to this court challenging the district court's rulings.

### DISCUSSION

Did the district court err in ruling that Local 595 did not breach its duty of fair representation to the electricians when it adopted and implemented a 40-mile radius rule that excludes them from preferential work assignment status?

Jurisdiction in this action lies under section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, which allows actions in federal court to enforce the terms of collective bargaining agreements. *Humphrey v. Moore,* 375 U.S. 335, 345, 84 S.Ct. 363, 369, 11 L.Ed.2d 370 (1964); *McCauslin v. FMC Corp.,* 728 F.2d 1275, 1275 (9th Cir.1984). The electricians assert that Local 595 breached the duty of fair representation on two grounds: (1) in the adoption of the radius rule and (2) in the application of the radius rule. A grant of summary judgment is reviewed *de novo.*

*Lojek v. Thomas,* 716 F.2d 675, 677 (9th Cir.1983). The reviewing court must determine whether there is any genuine issue of material fact and whether the substantive law was correctly applied. *Amaro v. Continental Can Co.,* 724 F.2d 747, 749 (9th Cir.1984); *Lojek,* 716 F.2d at 677.

1. *Adoption of the 40-mile Radius Rule.*

Initially, the electricians contend that the 40-mile radius rule barely includes all of Alameda County and excludes all of the "commuting area adjacent thereto." They assert that the radius rule thus contradicts the plain language of the Agreement. The Agreement defines the "normal construction labor market" as Alameda County *plus* the commuting distance adjacent thereto. (Emphasis added.) The electricians argue that the adoption of the radius rule by the union constitutes a "substantive rule" in excess of its authority under the Agreement because the rule limits Group I status to just Alameda County.

The legal effect of an unambiguous and undisputed contract provision of a collective bargaining agreement is a question of law reviewed *de novo. Kemner v. District Council of Painting & Allied Trades No. 36,* 768 F.2d 1115, 1120 (9th Cir.1985).

In response to the electricians' argument, Local 595 has requested that this court take judicial notice of the fact that a 40-mile radius from the hiring hall located in Oakland includes all or part of counties other than Alameda, *i.e.,* San Francisco, Marin, Napa, Contra Costa, Sacramento, San Joaquin, Solano, Stanislaus, Santa Clara, Santa Cruz and San Mateo.[2] Resort to the American Automobile Association's Map of California (1985 ed.), reveals that a 40-mile radius from the hiring hall does include counties other than Alameda.

---

1. The electricians are not appealing from the district court's dismissal of the remainder of their complaint that alleged discriminatory hiring hall practices.

2. Under Fed.R.Evid. 201(b)(2), this court may take judicial notice of facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Under this rule, it is well established that courts may take judicial notice of governmental boundaries. *See Government of the Canal Zone v. Burjan,* 596 F.2d 690, 693–94 (5th Cir.1979).

Thus, the electricians are incorrect in their assertion that the radius rule "barely includes Alameda County and excludes all the adjacent areas" in violation of the Agreement.

Moreover, Local 595 has the authority to clarify and explain the meaning of terms in the Agreement. A residence requirement is already embodied in the Agreement and the radius rule serves merely to clarify that requirement. It is not an additional criterion. In fact, the electricians acknowledged that the Committee has the authority to determine the meaning of "commuting distance adjacent thereto" on an individual case-by-case basis. Arguably, defining the term for all members is less arbitrary than defining it on a case-by-case basis. As defined, the rule provides a clear and absolute standard to electricians as to where they should reside to secure Group I status. Accordingly, the electricians' contention that the radius rule contradicts the plain language of the Agreement and is therefore in excess of the Committee's authority must fail.

In addition, the electricians contend that the 40-mile radius rule is harsh and arbitrary and violates Local 595's duty of fair representation.

Under the fair representation doctrine, the union has a "statutory obligation to serve the interests of all members without hostility or discrimination towards any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 910, 17 L.Ed.2d 842 (1967). Breach occurs only when a union acts in an arbitrary, discriminatory, or bad faith manner. *Id.* at 190, 87 S.Ct. at 916. The Ninth Circuit has defined as "arbitrary" conduct that is "without a rational basis," made with reckless disregard for the right of individual employees, or "egregious" and "unrelated to legitimate union interests." *Robesky v. Qantas Empire Airways, Ltd.*, 573 F.2d 1082, 1088–90 (9th Cir.1978).

Adoption of the radius rule was a legitimate exercise of Local 595's discretion.

Local 595 does have a valid interest in protecting the employment opportunities of the vast majority of its members. The 40-mile radius was rationally chosen in that only 20 of the 500 to 700 electricians live outside its boundaries.

The electricians, however, argue that the radius rule is harsh and arbitrary because it is contrary to past practice. The electricians point out that they were living within "commuting distance" for the past 20 years and had Group I status for that entire period of time under the Agreement.

The electricians fail to recognize that the collective bargaining relationship is a continuing relationship. "A collective bargaining contract operates prospectively over a substantial period of time and the parties cannot be expected to foresee all the problems that will develop ... within the period of the contract and ... scope must be left for decisions made in the course of performing the agreement." *Turner v. Local Union No. 302, International Brotherhood of Teamsters*, 604 F.2d 1219, 1226 (9th Cir.1979), *quoting Watson v. International Brotherhood of Teamsters*, 399 F.2d 875, 879 (5th Cir.1968). "Of necessity, however, collective bargaining agreements must be flexible and subject to change." *Turner*, 604 F.2d at 1226.

The Agreement in the instant case needed to be clarified because of the changed circumstances—*viz*, drastic drop in job opportunities. The Committee properly adopted a definition of "commuting distance." As stated in *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953), "Inevitably differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees and classes of employees. The mere existence of such differences does not make them invalid. The complete satisfaction of all who are represented is hardly to be expected." Thus, the definition of the term "commuting distance" adopted by the Committee was well within Local 595's discretion. Keeping in mind "the importance of preserving union discretion by narrowly con-

struing the unfair representation doctrine," *Johnson v. United States Postal Service,* 756 F.2d 1461, 1465 (9th Cir.1985), we find that Local 595 did not breach its duty of fair representation to the electricians in adopting the radius rule.

### 2. *Application of the 40-mile Radius Rule.*

The electricians also contend that Local 595's discriminatory and uneven application of the radius rule constitutes a violation of the duty of fair representation. The electricians allege that they have been singled out for reclassification. They argue that there are electricians living outside the radius who have not been reclassified. On summary judgment, the district court found that the electricians had failed to support their allegations that the rule was not applied uniformly.

The record reveals that other electricians living outside the radius have been reclassified. Although some electricians living outside the radius still remain in Group I status, including appellants Richmond and Schuknieht, this is because they have not signed up on the hiring hall list since the radius rule went into effect. They too will be reclassified once they leave their present jobs and return to the hiring hall for new jobs. Finally, although certain electricians may have used false addresses to maintain Group I status, once a complaint is made to the union, Local 595 promptly acts to verify the address given. While not models of efficiency, Local 595's procedures used to implement the radius rule do not rise to the level of discriminatory conduct in breach of the duty of fair representation.

AFFIRMED.