**Sheila CONKLE, Plaintiff,**

v.

**Sulinna JEONG, dba Laird's Food Market, Baldwin Jeong, Jadelin Enterprises, a corporation, dba Laird's Food Market, United Food and Commercial Workers' Union, Local 1179 AFL–CIO, Defendants.**

No. C–93–2443 VRW.

United States District Court, N.D. California.

May 2, 1994.

William J. Hooy, Concord, CA, for plaintiff Sheila Conkle.

Adam S. Gruen, Kenney, Burd & Markowitz, Moris Davidovitz, Davidovitz & Yaron, San Francisco, CA, for defendants Sulinna Jeong and Jadelin Enterprises dba Laird's Food Market.

Adam S. Gruen, Kenney, Burd & Markowitz, San Francisco, CA, David Miller, Hoyt Miller & Angstadt, Walnut Creek, CA, Moris Davidovitz, Davidovitz & Yaron, San Francisco, CA, for defendant Baldwin Jeong.

Michael T. Anderson, Steven L. Stemerman, Davis Cowell & Bowe, San Francisco, CA, for defendant Local 1179 United Food and Commercial Workers' Intern. Union.

## ORDER GRANTING SUMMARY JUDGMENT FOR DEFENDANTS ON ALL CLAIMS FOR RELIEF

WALKER, District Judge.

Plaintiff Sheila Conkle ("Conkle") began working at Laird's Market ("Laird's") on

September 30, 1976. After completing her probationary period at Laird's, she became a member of the United Food and Commercial Workers Union, Local 1179 ("Local 1179"). Conkle's principal job duties were to work in the liquor store section of Laird's, which included checking groceries for customers.

In October, 1992, Conkle experienced a "quick and fleeting" pain in her back while lifting something at work. She reported the pain to Sulinna Jeong, one of the owners of Laird's, who told her to file any workers compensation claim within three days. Conkle decided not to file a claim at that time because she believed that she would be able to handle her job without further problems.

On November 5, 1991, Conkle was lifting a case of liquor from the floor to a shelf above her head when she suddenly felt a pain "like somebody had taken an ice pick and shoved it in [her] lower back." As a result of her injury, Conkle was unable to walk without experiencing pain in her back. Her supervisor, Baldwin Jeong, released her to go see her family practitioner, Dr. Dana Slauson. Dr. Slauson allowed Conkle to return to work on condition that she refrain from lifting.

On November 8, 1991, Sulinna Jeong decided that Conkle should not continue to work if she was unable to lift. Conkle did not complain to any union representative about the fact that Sulinna Jeong was not permitting her to work. November 8, 1991, was the last day that Conkle actually "worked" for Laird's.

On December 9, 1992, Conkle received a call from her worker's compensation lawyer, Gary Snyder. Mr. Snyder stated that Sulinna Jeong had agreed that Conkle could return to work with a 25 pound weight lifting limit. Although Conkle had not yet received a doctor's medical release stating that she could return to work at this time, she assumed that she could go back to work as a grocery checker with no modification of duties.

On December 18, 1992, Sandra Twohy ("Twohy"), a Local 1179 representative, called Conkle to tell her that Laird's had been sold, and that all union employees would be laid off by December 28, 1992.

Local 1179 questioned the "sale" of Lairds because Sulinna Jeong had "sold" Laird's to Jadelin Corporation, a California corporation formed between her children, Baldwin and Jade Jeong, for the sole purpose of purchasing Laird's. Local 1179 believed that the "sale" was, in effect, a repudiation of the collective bargaining agreement between Laird's and Local 1179.

In response to the alleged repudiation of the union contract, Local 1179 filed a grievance under its collective bargaining agreement with Laird's to prevent the termination of Laird's union employees. Local 1179, through attorney David Rosenfeld, demanded that Laird's arbitrate Local 1179's grievance and threatened to compel arbitration through a federal court action. Moreover, on March 5, 1993, Local 1179 filed an unfair labor practice charge with the National Labor Relations Board, alleging that Laird's had refused to bargain with Local 1179 and had discriminated against its union employees.

Laird's refused to submit the grievance to arbitration. The union members at Laird's feared that they would permanently lose their jobs. Specifically, Conkle was concerned that Laird's would not recognize the union contract. Consequently, Local 1179 began picketing on February 16, 1993. The object of the picketers was to return to their jobs under the same union contract that was in effect before the dispute. Picketing continued for a total of seventeen days.

On March 10, 1993, Local 1179 settled its labor dispute with Laird's new owner, Baldwin Jeong. He agreed to be bound by the 1992–1995 Master Food Agreement and, in return, Local 1179 waived its claims for back pay for the period of December 28, 1992 through March 10, 1993. Additionally, Local 1179 agreed to withdraw all pending grievances and withdraw the unfair labor practice charge filed with the National Labor Relations Board.

At the outset of the negotiations, Baldwin Jeong made it clear that he was reluctant to put Conkle back to work. Local 1179 representatives, Philip Carney ("Carney") and Twohy, told Baldwin Jeong that he would

have to put Conkle back to work, so long as she provided a full medical release.

On March 11, 1993, Conkle met with Baldwin Jeong. At the meeting, he gave her a written job description which required that she be able to lift boxes up to 50 pounds, stock shelves, and stand for a period of two hours at a time.

On March 19, 1993, Conkle obtained a "qualified" medical release from Dr. Slauson. The release states that Conkle is able to do any work "which does not require prolonged bending, stooping or squatting." Moreover, Conkle "is able to lift articles up to [twenty-five pounds] if she is not required to bend over to lift them." The release further provides that Conkle "should not stand without moving for longer than an hour in any 4 hour period." Conkle admits that she was surprised to learn that Dr. Slauson had restricted her from standing for longer than one hour in a four hour period. Prior to receiving Dr. Slauson's release, Conkle had been under the impression that she could stand for longer than one hour within a four hour period.

By letter dated March 21, 1993, Conkle informed Local 1179 that Baldwin Jeong had written her a note stating: "because of [Conkle's] past and present medical conditions, [she] did not meet the requirements of employment at his firm." Conkle requested Local 1179 to "please advise [her] of the union position on this matter A.S.A.P." By letter dated March 24, 1993, Conkle's attorney questioned: "what, if anything, Local 1179 intend[ed] to do in response to Sheila Conkle's [sic] of 3/21/93 in response to the discriminatory practices of Laird's Food Markets."

On March 30, 1993, Local 1179's counsel responded with a letter stating: "Ms. Conkle's medical certificates indicate she cannot perform the duties required of her. There is no basis to conclude that the employer's job requirements are inappropriate, unrelated to the actual duties or applied discriminatorily. Moreover, it does not appear that even with

reasonable accommodation, Ms. Conkle could perform the essential duties of the job." The letter concluded as follows: "If there is further information which would cause the Union to re-evaluate its position, please bring it to our attention. Otherwise, the Union is not in a position to proceed further in this matter."

Neither Conkle nor her attorney responded to Local 1179's letter of March 30, 1993. In fact, the next time Local 1179 heard from Conkle was June 30, 1993, the date this action was filed.[1]

Conkle's complaint includes three claims for relief: (1) a § 301 claim against both her union, Local 1179 (for breach of its statutory duty of fair representation), and her employer, Laird's Foods (for termination without "just cause" in violation of the collective bargaining agreement); (2) slander against Baldwin Jeong; and (3) intentional interference with prospective economic advantage against Baldwin Jeong.

Defendants now move for summary judgment pursuant to FRCP 56 on each cause of action. Having reviewed the papers submitted and the arguments of counsel at the hearing on April 15, 1994, the court hereby: (1) **GRANTS** defendants' motion on count one for violation of § 301 of the Labor Management Relations Act; (2) **GRANTS** defendant Baldwin Jeong's motion on count two for slander; and (3) **GRANTS** defendant Baldwin Jeong's motion on count three for intentional interference with prospective economic advantage.

## I

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FRCP 56; *British Airways Board v. Boeing, Co.,* 585 F.2d 946, 951 (9th Cir.1978). The burden on the non-moving party is as follows:

> When a motion for summary judgment is made and supported as provided in this

---

1. Although Conkle contends that there are additional facts relevant to this action, there is no substantial dispute with respect to the foregoing facts. Nevertheless, in instances in which Con-

kle's additional facts are relevant to the arguments discussed, the court has fully addressed and considered such facts in ruling on defendants' motion for summary judgment.

rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

FRCP 56(e).

If defendant is the moving party, he sustains his burden by demonstrating "that there is an absence of evidence to support the non-moving party's case." *Celotex v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party makes such a showing, the burden shifts to the non-moving party to go beyond the pleadings and "designate specific facts showing that there is a genuine issue for trial." *Id* at 324, 106 S.Ct. at 2553. The non-moving party must do more "than simply show that there is some metaphysical doubt as to material facts * * *." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'" and summary judgment is proper. *Id.*

## II

■ In count one of her complaint[2], Conkle alleges that the union breached its statutory duty of fair representation during the labor dispute of December 24, 1992 through March 10, 1993, by not doing enough to support her and her fellow union members. Specifically, Conkle complains that Local 1179 should have: (1) provided paid picketers; (2) publicized the dispute more widely; (3) provided higher-quality picket signs; (4) had its business agents spend more time on the picket line; and (5) allowed picketers to air their complaints before the Union's Executive Board. Even assuming

that Local 1179 failed to provide or permit all of the above, Local 1179 correctly states that "federal law does not mandate how unions must allocate their resources in labor disputes."

■ A union's duty of fair representation is inferred from the union's exclusive authority under the National Labor Relations Act, 29 USC § 159(a), to represent all employees in a bargaining unit. *Chauffeurs, Teamsters & Helpers Local No. 391 v. Terry*, 494 U.S. 558, 563, 110 S.Ct. 1339, 1343, 108 L.Ed.2d 519 (1990). In *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), the Supreme Court defined the duty of fair representation:

> [T]he exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.

*Id.* at 177, 87 S.Ct. at 910. The union's duty of fair representation extends to its conduct in negotiating collective bargaining agreements as well as in pursuing grievances on behalf of individual employees. *Bautista v. Pan American World Airlines, Inc.*, 828 F.2d 546, 549 (9th Cir.1987).

■ In the context of representing its members at the bargaining table, a union must be allowed a "'wide range of reasonableness' because it must be able to focus on the needs of its membership as a whole without undue fear of lawsuits from individual members disgruntled by the result of the collective [bargaining] process." *Bautista*, 828 F.2d at 549. The union has the "discretion to make such concessions and accept such advantages as, in the light of all relevant considerations, [it] believe[s] will best serve the interests of the parties represented." *Ford Motor Co. v. Huffman*, 345 U.S. 330, 337–38, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1952). The "complete satisfaction of all who are represented is hardly to be expected."

---

**2.** In count one of her complaint, Conkle alleges that Local 1179 violated its statutory duty of fair representation in a number of ways. Nevertheless, each factual allegation is dealt with individually for purposes of clarity.

*Huffman,* 345 U.S. at 338, 73 S.Ct. at 686. Accordingly, a union breaches its statutory duty of fair representation *only* when its conduct toward a member of the collective bargaining unit is *"arbitrary, discriminatory or in bad faith."* *Vaca,* 386 U.S. at 190, 87 S.Ct. at 916 (emphasis added).

In this case, Local 1179 took a number of steps in its attempts to resolve the labor dispute with Laird's. In response to the repudiation of the union contract at Laird's, Local 1179 immediately filed a grievance under the collective bargaining agreement with Laird's to prevent the termination of Laird's union employees. Carney Declaration at ¶ 6 and Exhibit C thereto. Subsequently, after receiving what it considered inadequate responses from Laird's, Local 1179, through attorney Rosenfeld, demanded that Laird's arbitrate the union's grievance and threatened to compel arbitration through a federal court action. Rosenfeld Declaration at ¶ 4 and Exhibit B thereto. Because Laird's refused to submit the Union's grievance to arbitration, the union began picketing Laird's on February 16, 1993. The picketing continued for a total of seventeen days. On March 5, 1993, the union filed an unfair labor practice charge with the National Labor Relations Board alleging that Laird's had refused to bargain with the union and had discriminated against its union employees.

On March 10, 1993, the union settled the labor dispute with Laird's. The new owners, Baldwin and Jade Jeong, agreed to be bound by the 1992–1995 Master Food Agreement, the same contract that had bound Laird's before the change in ownership. In her deposition, Conkle admitted that the application of this Master Food Agreement was exactly for what the picketers were fighting.

Based on the above, the court finds that no reasonable trier of fact could conclude that Local 1179's actions fell outside the "wide range of reasonableness" afforded unions in resolving labor disputes. Because Conkle has failed to provide *any evidence* to demonstrate that there is a triable issue of fact whether the union acted "arbitrarily, discrim-inatorily or in bad faith" in resolving the labor dispute, Local 1179's motion for summary judgment on the issue whether it violated its statutory duty of fair representation by not doing enough to support Conkle and her fellow members during the labor dispute is hereby **GRANTED.**

### III

In count one of her complaint, Conkle also alleges that Local 1179 improperly withdrew all pending grievances and improperly waived its claim for back pay for the ten weeks of the labor dispute. Local 1179 argues that these concessions were reasonable under the circumstances for three reasons. First, the union faced a substantial risk of defeat if it continued to fight for back pay as a term of the labor dispute settlement. Second, even if the union would have prevailed in a civil action to compel arbitration or a National Labor Relations Board proceeding, the union members would have faced "a probable delay of several years before recovering any relief." Finally, the union's decision to waive back pay and all pending grievances was a strategic decision in light of the fact that it was "better to resume a normal relationship with Laird's under the union contract than to drive the small market out of business permanently."

Based on the above, the court finds that the union has sustained its burden of demonstrating that no reasonable trier of fact could conclude that Local 1179's actions fell outside the "wide range of reasonableness" afforded unions in settling labor disputes and in negotiating collective bargaining agreements. Consequently, Conkle was required to put forth evidence creating a triable issue of fact whether Local 1179's actions were "arbitrary, discriminatory or in bad faith." Conkle did not address this issue, much less sustain her burden, in response to the motion. Accordingly, Local 1179's motion for summary judgment on plaintiff's claim for violation of the duty of fair representation with respect to the labor dispute and the contract negotiation is hereby **GRANTED.**[3]

---

3. Because Local 1179's decision to withdraw all pending grievances fell within the "wide range of reasonableness" afforded unions in such circumstances, any claim Conkle had against Laird's prior to the settling of the labor dispute is now moot.

## IV

In count one of her complaint, Conkle also alleges that Local 1179 violated its duty of fair representation by "conniving with management to exclude her as an employee at the market" by suggesting that Laird's require a full medical release before permitting her to resume working. Local 1179 argues, however, that its suggestion that Laird's require Conkle to provide a full medical release was reasonable under the circumstances and, therefore, it is entitled to judgment as a matter of law.

During the contract negotiations, Baldwin Jeong initially displayed reluctance in putting Conkle back to work. Nevertheless, Local 1179's president, Philip Carney, admonished Baldwin Jeong that "the negotiations would be over right there unless *all union members* were taken back." Carney Declaration at ¶ 9 (emphasis added). Carney stated that Baldwin Jeong "would have to put Conkle back to work, so long as she provided a full medical release." Carney Declaration at ¶ 9; Twohy Declaration at ¶ 4. Baldwin Jeong found this acceptable. Accordingly, on March 10, 1993, Local 1179 and Baldwin Jeong agreed that each would sign the Master Food Agreement, effective March 1, 1993, and reinstate all union employees, specifically Conkle, with full seniority. Carney Declaration at ¶ 9 and Exhibit E thereto.

Based on the above, the court finds that no reasonable trier of fact could conclude that Local 1179's actions were not reasonable under the circumstances. Conkle fails to realize that Local 1179 is the exclusive bargaining representative for *all of its members,* not just her. Local 1179's primary goal was to secure a contract on behalf of the union members as a group, not to worry about the specific concerns of each individual member. When faced with the reality that the negotiations would break down if Laird's refused to take Conkle back, Local 1179 proposed a viable solution, thereby saving the negotiations. Because Local 1179's actions were reasonable under the circumstances, Conkle must provide evidence to create a triable issue of fact whether Local 1179 acted "arbitrarily, discriminatorily or in bad faith."

In her attempt to demonstrate that Local 1179 acted "arbitrarily, discriminatorily or in bad faith," Conkle makes vague allegations that the "leadership of Local 1179 has long been known to 'reward their friends and punish their enemies.'" Even assuming that this is true, it is irrelevant with respect to whether Local 1179 acted "arbitrarily, discriminatorily or in bad faith" *toward her.*

Conkle attempts to show that Local 1179 acted in "bad faith" *toward her* by providing evidence that "on March 9, the day before the negotiations, [the union was informed] that [Conkle] had been out on disability and could not lift 25 pounds and, therefore, couldn't go back to work." Hooy Declaration ¶ 13 and Exhibit I thereto. Nevertheless, Conkle has merely demonstrated that Local 1179 was aware of the fact that she had suffered a back injury which had restricted her physical activity. Clearly, this was not the first time Conkle's back injury was brought to Local 1179's attention, as Conkle had been on leave for quite some time.

Moreover, Conkle has admitted that prior to her injury, her job required that she lift cases of liquor "between 55 and 60 pounds." Anderson Declaration and Exhibit J thereto. Because Local 1179 wanted to assure Baldwin Jeong that Conkle could assume the same work responsibilities upon returning to work, it recommended that Baldwin Jeong require Conkle to provide a full medical release. The court cannot perceive how a reasonable trier of fact could conclude that such a recommendation was discriminatory or in bad faith toward Conkle.

Based on the above, the court concludes that Conkle has failed to sustain her burden of demonstrating that there is a triable issue of fact whether Local 1179 acted "arbitrarily, discriminatorily or in bad faith" toward her. Accordingly, Local 1179's motion for summary judgment on the claim that it violated its statutory duty of fair representation by suggesting that she obtain a "full medical release" before returning to work is hereby **GRANTED.**

## V

In count one of her complaint, Conkle also alleges a § 301 claim against her employer,

Laird's Foods, for terminating her without "just cause" in violation of the Master Food Agreement. Additionally, Conkle alleges that Local 1179 breached its statutory duty of fair representation by failing to pursue her grievance against her employers when her employers declined to put her back to work because she was not physically able to perform her job.

An employee may bring a wrongful discharge action under § 301 of the Labor Management Relations Act against his employer as the sole defendant, or he may also join his union as a defendant by alleging that the union breached its duty of fair representation. *Ness v. Safeway Stores, Inc.*, 598 F.2d 558, 560 (9th Cir.1979). Nevertheless, to prevail against either the company or the Union, a union member must not only show that his discharge was contrary to the collective bargaining agreement, but must also show that the union violated its statutory duty of fair representation. *Hines v. Anchor Motor Freight*, 424 U.S. 554, 570–71, 96 S.Ct. 1048, 1059, 47 L.Ed.2d 231 (1976). Accordingly, the threshold issue governing the liability of both parties on this claim is whether the union's conduct in handling Conkle's grievance was in breach of its statutory duty of fair representation.

■ In the grievance context, a union breaches its statutory duty of fair representation if it ignores a meritorious grievance or processes it in a perfunctory manner. *Vaca*, 386 U.S. at 191, 87 S.Ct. at 917. Nevertheless, the union is accorded great latitude in the handling of employee grievances. *Ness*, 598 F.2d at 560. Unless the union demonstrates a reckless disregard for the rights of the individual employee in handling employee grievances, the courts are hesitant to interfere with the union's decision. *Id.*

An employee who alleges a violation of the collective bargaining agreement between his union and the employer, must exhaust the grievance and arbitration procedures before bringing suit under § 301. *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652–53, 85 S.Ct. 614, 616–17, 13 L.Ed.2d 580 (1965). In most instances, a failure to utilize the grievance procedures, bars grievants from pursuing their remedies in court. *Id.* at 652, 85 S.Ct. at 616.

In this case, Local 1179 contends that Conkle "never filed any formal grievance required by Section 18.2 of the union contract, Ex. 2 to Carney Dec., even though she had her own copy of the contract, Conkle Dep. at 15:21–16:3, and legal counsel to assist her." She merely had her attorney inquire, by letter dated March 24, 1993, "what, if anything Local 1179 intend[ed] to do * * * in response to the discriminatory practices of Laird's Food Markets." Carney Declaration and Exhibit F thereto. On March 30, 1993, Local 1179's counsel responded with a letter stating: "[b]ased on the facts known to the Union * * * it does not appear that even with reasonable accommodation, Ms. Conkle could perform the essential duties of the job." Carney Declaration ¶ 15 and Exhibit I thereto. Moreover, the letter specifically stated that "[i]f there is further information which would cause the Union to re-evaluate its position, please bring it to our attention. Otherwise, the Union is not in a position to proceed further in this matter." Id.

■ Even assuming that the March 24, 1993 letter from Conkle's counsel qualifies as a grievance, Conkle and her counsel neither responded to Local 1179's letter, nor communicated with the union before filing suit. Local 1179 correctly states that "[t]he most basic principle of fair-representation law is that a member may not boycott the grievance procedure, and then complain that the union has failed to vindicate her rights." *See Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965). Local 1179 persuasively argues that Conkle should not be permitted to " 'hide the ball' by refusing to give [Local 1179] information establishing her grievance, and then sue [Local 1179] for failing to uncover that information independently."

■ Conkle contends that her failure to exhaust the grievance and arbitration procedures is excused because it would have been futile. Although an employee's failure to exhaust *may* be excused when "the union's breach of [its] duty of fair representation *prevent[s]* [the plaintiff] from" doing so, *Dutrisac v. Caterpillar Tractor Co.*, 749 F.2d

1270, 1274 (9th Cir 1983) (emphasis added), caselaw makes it clear that the same does not apply here.

In an employee action against a union for breach of its statutory duty of fair representation, plaintiffs alleged that their failure to exhaust should be excused as futile because the alleged past misconduct of union officials had discouraged them from seeking the union's assistance after they were terminated. *Garcia v. Hudson Lumber Co.*, 679 F.Supp. 961, 965 (N.D.Cal.1987). The court stated, however, that past union misconduct does not excuse an employee's failure to exhaust the grievance and arbitration procedures. *Id.* An employee's failure to exhaust will be excused *only when* the employee can show that the union's breach of its statutory duty of fair representation *prevented* him from processing his grievance. *Id.*

In this case, Conkle concedes her failure to exhaust the grievance and arbitration process. She contends, however, that her failure to exhaust is excused because it would have been futile. Nevertheless, she has failed to provide any evidence showing that there is a triable issue of fact whether Local 1179 *prevented* her from pursuing the grievance and arbitration process. Conkle has merely demonstrated that she felt some animosity from various Local 1179 members and executives. Because this is insufficient to excuse her failure to exhaust, the court concludes that Conkle may not pursue her contractual remedies in this court. Accordingly, Local 1179's motion for summary judgment on the claim that it violated its statutory duty of fair representation by failing to pursue Conkle's grievance is hereby **GRANTED**.

## VI

Because a plaintiff cannot proceed against his employer under § 301 without first establishing a breach of the duty of fair representation by his union, defendants' motion for summary judgment on Conkle's § 301 claim against her employer is hereby **GRANTED**.

## VII

In her second claim for relief, Conkle alleges that defendant Baldwin Jeong uttered false and unprivileged publications regarding her to separate telephone callers who, in consultation with Conkle, falsely identified themselves to Baldwin Jeong as prospective employers of Conkle seeking to verify her employment. Specifically, Conkle alleges that Baldwin Jeong "uttered statements about [her] to third parties, including prospective employers, to the effect:

(a) that while [Conkle] worked at the market she acted like she thought she was management, knew everything and was difficult as an employee; (b) that [Conkle] led a strike against the market, but her own Union turned against her because she was too radical; (c) that there were many customer complaints about [Conkle], some saying they would rather stand in another cashier's line for two hours, rather than be waited on by [her]; (d) [sic] and that [Conkle] is more trouble than she is worth."

Complaint ¶ 24. Baldwin Jeong argues that summary judgment should be granted because the statements were: (1) truthful; (2) statements of opinion; and (3) protected under a qualified privilege. Although any one of these arguments is dispositive, each is addressed below.

Slander is defined as "a false and unprivileged publication," uttered orally, which tends directly to injure the subject in respect to his office, profession, trade or business. Cal.Civ.Code § 46 (West 1982). The truth of the statement is a complete defense, "regardless of the bad faith or malicious purpose of the publisher of the material." *Swaffield v. Universal Ecsco Corp.*, 271 Cal.App.2d 147, 76 Cal.Rptr. 680, 690 (1969).

In this case, it is undisputed that Conkle was never a management employee at Laird's, yet she admitted that she performed management duties and acted accordingly. Additionally, it is undisputed that Conkle lead the strike against Laird's and that she believes her own union turned against her, as evidenced by her veritable potpourri of claims against Local 1179 for breach of its duty of fair representation. Conkle Deposition 536: 8–10. Finally, it is undisputed that Laird's received customer complaints regarding Conkle. Declaration of Baldwin Jeong

¶ 10. In fact, one customer stated that he "found Sheila Conkle to be so unpleasant that when [he] went into the store, [he] would go to another check-stand to avoid her." Declaration of Baldwin Jeong ¶ 10 and Exhibit B thereto. Because Baldwin Jeong has sustained his burden of showing that the above statements are true, the court concludes that such statements are not actionable.

■ Furthermore, Baldwin Jeong contends that even if the above statements are not true, the statements at issue are not actionable because they are statements of opinion. The essential inquiry in a defamation action is whether a "reasonable fact finder could conclude that the published statements imply a provably false factual assertion." *Moyer v. Amador Valley Joint Union High School District,* 225 Cal.App.3d 720, 275 Cal.Rptr. 494, 497 (1990). The determination of whether a statement implies a provably false factual assertion is a question of law. *Id.*

For example, the statement that "Mr. Moyer (a teacher) is * * * the worst teacher at FHS" was found to be non-actionable opinion because it was not capable of being proven true or false. Id. Additionally, the statement: "I think someone is being bought on the Planning Commission, otherwise, how could you explain a 3–3 vote at one meeting on an issue and then at the very next meeting, a 6–1 vote?" was found to be non-actionable opinion. *Carr v. Warden,* 159 Cal. App.3d 1166, 1168, 206 Cal.Rptr. 162, 163 (1984).

Applying the foregoing standard, the court concludes as a matter of law that Baldwin Jeong's statements that Conkle "acted like she thought she was management," "was too radical," "was difficult as an employee," and "is more trouble than she is worth" are statements of opinion because they do not imply a provably false factual assertion. Accordingly, such statements are not actionable.

■ Finally, Baldwin Jeong contends that even if the above statements are actionable either because they are false or because they are statements of fact, the statements are not actionable because each is protected by a qualified privilege. California Civil Code § 47(c) provides in pertinent part: "A privileged communication is one made * * * without malice, to a person interested therein * * * by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or * * * [by one] who is requested by the person interested to give the information." Cal.Civ.Code § 47(c) (West 1984). Thus, where comments are made by a former employer to a prospective employer who requests information regarding the employee, the communication is presumed to be privileged. *Neal v. Gatlin,* 35 Cal.App.3d 871, 877, 111 Cal.Rptr. 117 (1973).

Here, Baldwin Jeong's statements were made to two separate individuals who stated that they were prospective employers calling to verify Conkle's employment with Laird's and to request a candid appraisal of her job performance. Because these statements are presumed to be privileged, Conkle has the burden to prove that the statements were made with actual malice so as to defeat the privilege. *Williams v. Taylor,* 129 Cal. App.3d 745, 752, 181 Cal.Rptr. 423 (1982). Specifically, Conkle must create a triable issue of fact whether the statements were made with *actual malice, i.e.,* "a state of mind arising from hatred or ill will, evidencing a willingness to vex, annoy, or injure another person." *Agarwal v. Johnson,* 25 Cal.3d 932, 944, 160 Cal.Rptr. 141, 603 P.2d 58 (1979).

In her attempts to demonstrate that Baldwin Jeong made the above statements with actual malice, Conkle states that she "infers" malice from Baldwin Jeong's statement to Carney that he "didn't want [her] back as an employee." Nevertheless, this statement has no bearing on whether Baldwin Jeong acted with "actual malice" when making the statements at issue with respect to Conkle's claim for slander. This merely demonstrates that Baldwin Jeong did not want to take Conkle back. Although the law requires employers to take employees back under such circumstances, the law cannot compel employers to do so happily.

Moreover, Conkle argues that the substance of the telephone conversations at issue demonstrates that Baldwin Jeong acted with "actual malice." The court, however, disagrees. The substance of the conversations does not create a triable issue of fact whether Baldwin Jeong acted with any "hatred or ill will" toward Conkle. The substance of the conversations merely demonstrates that Baldwin Jeong provided candid responses to the questions posed by the callers; it shows nothing with respect to Baldwin Jeong's state of mind. Consequently, the court concludes that Conkle has failed to provide evidence demonstrating that there is a triable issue of fact whether Baldwin Jeong's statements were made with the "actual malice" necessary to overcome the qualified privilege.

Based on the above, the court concludes that the statements by Baldwin Jeong are not actionable because they are either true or statements of opinion. Nevertheless, even assuming that the statements are actionable because they are either false or statements of facts, the court finds that Conkle has failed to create a triable of fact whether the statements were made with actual malice. Accordingly, Baldwin Jeong's motion for summary judgment on the slander claim is hereby **GRANTED.**

### VIII

Conkle's third claim for relief is for intentional interference with prospective economic advantage. Specifically, Conkle contends that Baldwin Jeong uttered statements to "prospective employers * * * with intent to prevent [her] from obtaining employment."

 The elements of a claim for intentional interference with prospective economic advantage are: "(1) an economic relationship between the plaintiff and some third person containing the probability of future economic benefit to the plaintiff; (2) knowledge by the defendant of the existence of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) damages to the plaintiff proximately caused by the acts of the defendant." *Blank v. Kirwan,* 39 Cal.3d 311, 330, 216 Cal.Rptr. 718, 703 P.2d 58 (1985).

In this case, Baldwin Jeong has sustained his burden of demonstrating that there is an absence of evidence to support Conkle's claim for intentional interference with prospective economic advantage. Conkle has not identified any relationship between herself and a third party containing a probability of future economic benefits. Conkle claims that she had an expected job at Safeway. Nevertheless, she has failed to provide any evidence on this issue; speculation is not enough. Moreover, Conkle claims that her expected job with Safeway "mysteriously evaporated," after Baldwin Jeong provided false information about her in response to an inquiry by Safeway. Conkle has failed to provide any evidence that Safeway contacted Baldwin Jeong, much less that he made disparaging remarks about her. Because Conkle has failed to provide any evidence in support of her claim for intentional interference with prospective economic advantage, Baldwin Jeong's motion for summary judgment on this claim is hereby **GRANTED.**

IT IS SO ORDERED.