**George HARDEE, Appellee,**

v.

**NORTH CAROLINA ALLSTATE SERVICES, INC., Appellant.**

**No. 75–2204.**

United States Court of Appeals, Fourth Circuit.

Argued March 31, 1976.

Decided July 16, 1976.

---

Robert G. Currin, Jr., Columbia, S. C. (Nelson, Mullins, Grier & Scarborough, Columbia, S. C., on brief), for appellant.

James A. Spruill, III, Cheraw, S. C. (Harris, Griggs & Spruill, Cheraw, S. C., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and WINTER and BUTZNER, Circuit Judges.

WINTER, Circuit Judge:

George Hardee (Hardee) brought this action against North Carolina Allstate Services, Inc. (Allstate), his former employer, seeking damages for wrongful discharge and defamation. The jury returned a general verdict awarding Hardee $20,000 in compensatory damages and $50,000 in punitive damages. From a judgment on this verdict, Allstate appeals. We reverse.

## I.

Because of the nature of the appeal, we view the evidence in the light most favorable to Hardee. It showed that Allstate leases truckdrivers to various corporations, one of which is Allied Chemical Motor Operations (Allied). Allstate hires the truckdrivers and pays them, but the drivers are dispatched by the lessees. Hardee was a truckdriver employed by Allstate but working out of Allied's terminal near Columbia, South Carolina.

Hardee, a union member of long standing, wished to attend a union meeting to be held on May 8, 1974, in Columbia, South Carolina, at which charges that he made against the union were to be considered. When Allied assigned him and Larry Ray (Ray) to a trip which would prevent his being in Columbia on May 8, 1974, Hardee first unsuccessfully sought to have the meeting postponed and then to be released by Allied from the assignment in time to permit him to return to Columbia. The latter effort proved unavailing; and after informing the Allied dispatcher of his plans, Hardee left his truck in Annandale, Virginia, on the morning of May 8 and flew by commercial airline from Washington, D. C., to Columbia. Ray then drove the truck from Annandale to Columbia alone.

Following the union meeting, Hardee went to meet the truck in Columbia on the evening of May 8. The truck arrived between 9:30 and 9:50 p. m.; Hardee spent approximately one-half hour at the terminal checking out and turning in all of his bills from the trip. Despite the fact that he had left the truck in Annandale on the morning of May 8, Hardee falsely indicated in his log that he had been in the truck's sleeper berth from 9:30 a. m. until 10:00 p. m. on that day. He also claimed total mileage for the trip from Annandale to Columbia, a distance of 467 miles, on the trip sheet which is submitted for pay purposes, and was paid the sum of $46.60 for that mileage, plus three-quarters of an hour delay time.

Approximately one week later, Allstate's regional manager learned that Hardee had not been in the truck between Annandale and Columbia. On May 18 Allstate sent Hardee a letter informing him that an investigation was being conducted and that if it were found that Hardee had in fact not been in the truck between Annandale and Columbia, then he would be discharged for

falsification of his log and theft of company time. On May 24 Allstate sent Hardee a letter discharging him. Copies of both letters were sent to Hardee's union, the terminal manager, and Allied.

Hardee was and is a member of Local 509 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (the union). Allstate and the union were at all relevant times parties to a collective bargaining agreement which provided for a grievance and arbitration procedure in cases of discharge. At Hardee's request, the union protested his dismissal, and pursued the matter through all stages of the grievance procedure, culminating in arbitration. The arbitrator upheld the dismissal. This diversity action [1] followed.

## II.

■ In giving initial consideration to the evidentiary basis for the verdict in this case, we recognize that the jury's factual findings should not be disturbed unless there is no substantial evidence to support them. *Harner v. John McShain, Inc.,* 394 F.2d 480 (4 Cir. 1968).

The first count in Hardee's complaint alleged that he was discharged unlawfully. In support of the jury's general verdict, Hardee argues that the proof permitted the jury to find that he did no more than falsify a log, and that the contract prescribes only a reprimand as the penalty for such a falsification.

■ The first obstacle to this contention is the arbitration decision upholding Hardee's discharge. Where a collective bargaining agreement provides procedures by which disputes are to be resolved, then the decision reached under these procedures is generally final and binding on the parties and will not be disturbed by the courts. *Humphrey v. Moore,* 375 U.S. 335, 351, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964). An exception to this rule is where the union has

breached its duty of fair representation in its handling of a grievance. *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). Thus, where the grievance has been handled only perfunctorily or in bad faith and there is substantial reason to believe that a union breach of duty contributed to an erroneous outcome in the contractual proceedings, the arbitral bar is removed. *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976).

■ We do not think that the evidence was sufficient to permit a jury to avoid the arbitral bar. The record supports Hardee's contention that there was considerable tension between himself and the union hierarchy. However, the mere existence of bad feeling is not enough to obviate the finality of an arbitration award; Hardee must show that his grievance was handled improperly. In this case there is no evidence to support such a conclusion.

■ Hardee asserts a general lack of preparation and effort by his union-appointed representative at the arbitration hearing. Specifically, Hardee suggests that his representative should have interviewed Ray and the Allied dispatchers, Snelgrove and James. In addition, Hardee challenges the failure to call Ray at the hearing and the failure to cross-examine Snelgrove when the latter's testimony at the hearing allegedly diverged from a prehearing statement.

Such alleged defaults alone are not of sufficient magnitude to justify inquiry into the merits of an arbitral award, and there is no evidence that they influenced the award. Hardee admits having falsified the log and having been paid for time that he was not in the truck; the only question for the arbitrator was whether these actions constituted "theft or dishonesty" within the meaning of the collective bargaining agreement. For all that appears, there was no connection between the testimony which

1. The district court also had jurisdiction over the claim for improper discharge under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

might have been elicited from Snelgrove, James and Ray and the unfavorable interpretation of the collective bargaining agreement by the arbitrator.[2]

Moreover, there is strong evidence that Hardee's grievance was fully and vigorously prosecuted by the union. *Vaca v. Sipes, supra,* establishes that unions have no absolute duty to take all grievances to arbitration; here, in addition to the arbitration itself, the union supported Hardee's position through the three levels of the grievance procedure established by the collective bargaining agreement. Undisputed testimony indicates that Hardee congratulated the union representative on the quality of his presentation at the arbitration proceeding. At the conclusion of that proceeding, Hardee was asked if he had anything to add and replied that he did not. Such behavior undermines his claim that he was inadequately represented. *See Davis v. Ameripol, Inc.,* 55 F.R.D. 284, 286–87 n. 6 (E.D.Tex.1972).

In short there is insufficient evidence to support an inference by the jury that the arbitration proceeding was tainted by union misconduct or neglect. Thus there was lacking a substantial factual basis to support a jury award on the theory of improper discharge.

### III.

Hardee also argues that the jury's verdict should stand because he was defamed by the notices of investigation and termination, respectively, to the union, the terminal manager and Allied. Since Hardee concedes that the notices were qualifiedly privileged[3] because they were necessary to discharge Hardee under the collective bargaining agreement,[4] he carried the burden of proving that the allegedly libelous statements made therein were not only false but also made with malice.

The allegedly libelous accusation in the notice of investigation—that Hardee had engaged in "theft of company time"— is not so outrageous on its face as to give rise to an inference of malice; indeed, it seems a reasonable description of Hardee's behavior. The notice of discharge is even more moderate.[5]

Hardee relies on two extrinsic facts as supporting an inference of malice. First, he argues that the ten-day delay between his falsification of the log and the notice of investigation suggests that Allstate was trying to trap him by waiting until after he had been paid so that he could be charged with theft. However, undisputed testimony indicates that Allstate

---

2. Ray allegedly would have testified that except for approximately $12.00, he was entitled to all of the money which Hardee received as a result of the falsification of the log. Hardee argues that this testimony would have aided him before the arbitrator, because it would have shown that most of the extra compensation which he received was stolen from Ray rather than Allstate.

    However, under the collective bargaining agreement the magnitude of theft is irrelevant; "[t]heft or dishonesty of any kind" carries a penalty of dismissal. Even assuming that Ray, who was hostile to Hardee at trial, would have testified in the manner that Hardee suggests, $12.00 would have remained unaccounted for. Thus Ray's testimony could not have changed the decision of the arbitrator.

3. In view of our holding that Allstate did not exceed the scope of a qualified privilege, we express no opinion on Allstate's contention that the contents of the notices should be absolutely privileged. *See General Motors Corp. v. Mendicki,* 367 F.2d 66 (10 Cir. 1966).

4. Allstate was not required by the collective bargaining agreement to notify Allied. However, the falsification of the log concerned an assignment which Hardee was purportedly carrying out for Allied; thus Allied clearly had an interest in the case. Therefore we hold that the communication of the charges to Allied was within the scope of the privilege.

5. The body of the notice of discharge read: This is to inform you that the investigation of the incident that occurred on May 8, 1974 has been completed and that it has been proven that you have charged the company for miles that you did not run and for hours on delay time to which you were not entitled, that you falsified a Federal document, namely your log, showing that you were in the sleeper berth from 9:30 a. m. until 10:00 p. m. when this was not so, that you were in direct violation and disobedience of orders by failing to sign in as required and instead had a second party sign you in. Therefore, you are hereby discharged from employment with this company for the above actions.

did not learn of the falsification until approximately one week after it took place; thus the actual delay in filing charges was negligible. Hardee also relies on previous attempts by Allstate to fire him. However, such attempts standing alone do not give rise to an inference of malice. *See Hines v. Local 377, Teamsters Union*, 506 F.2d 1153, 1158 & n. 1 (6 Cir. 1974), reversed on other grounds *sub nom. Hines v. Anchor Motor Freight*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976). Hardee's assertion—that the investigation by Allstate of the alleged infractions was a mere sham and that his dismissal and the charges against him were an attempt to placate the union leadership—is totally lacking in supporting evidence. It is axiomatic that mere speculation cannot support a finding of malice.

Thus, there was also insufficient evidence to support a jury verdict that the plaintiff was entitled to recover for defamation. Since the record supports neither of plaintiff's claims for recovery, the judgment of the district court is

*REVERSED.*