Alan H. WILLIAMS, Plaintiff,

v.

AIR WISCONSIN, INC., International Association of Machinists & Aerospace Workers and IAM Air Transport, District 143, Defendants.

Civ. A. No. 3:94cv212.

United States District Court,
E.D. Virginia,
Richmond Division.

Jan. 20, 1995.

Gary R. Hershner, Joseph D. Morrissey, Morrissey & Hershner, Richmond, VA, for plaintiff.

Harvey B. Cohen, John C. Pasierb, Cohen, Getting & Dunham, Arlington, VA, Michael Curley, Patricia H. Kim, O'Melveny & Myers, New York City, for defendant Air Wisconsin.

James J. Vergara, Jr., Vergara & Associates, Hopewell, VA, Joseph Guerrieri, Jr., Guerrieri, Edmond & James, Washington, DC, for defendants Intern. Ass'n of Machinists & Aerospace Workers and IAM Air Transport.

## MEMORANDUM OPINION

PAYNE, District Judge.

Alan H. Williams was employed by Air Wisconsin, Inc. from 1978 through 1992, when his employment was terminated on grounds of time card falsification. In this action, Williams alleges that the termination constituted a breach of the collective bargaining agreement between Air Wisconsin and Williams' former collective bargaining representative, International Association of Machinists and Aerospace Workers ("IAM") and IAM Air Transport District 143 ("District 143") (collectively "Union"). Williams has also sued the Union for breach of the duty of fair representation.

## STATEMENT OF FACTS

The collective bargaining agreement between Air Wisconsin and the Union provides for three classifications of maintenance employees: mechanics, lead mechanics, and inspectors. A mechanic is responsible for various mechanic and administrative functions. A lead mechanic performs the same work as a mechanic, but is responsible for coordinating the work of other mechanics. An inspector carries out the functions and duties of the inspection department. Lead mechanics and inspectors are entitled to receive an $0.85 per hour premium pay differential not available to mechanics. During the period that is the subject of this action, Williams was employed as a mechanic.[1] However, as work required, a mechanic could be temporarily upgraded to lead mechanic or inspector status, thereby earning the $0.85 per hour premium pay differential.

On July 5, 1992 Williams claimed 12 hours of premium pay. The time card does not require specification of whether premium pay is due for inspector work or for lead mechanic work. On August 4, 1992, Williams received an Incident Investigation form advising that he was being investigated for time card falsification on July 5. Also on August 4, Williams stated in writing that he had performed inspector duties on July 5, although he later retracted that explanation and claimed to have worked as a lead me-

---

1. Air Wisconsin originally hired Williams as a mechanic in 1978 in Appleton, Wisconsin. He later transferred to Ft. Wayne, Indiana and became an inspector in 1983. He continued to work as an inspector following his transfer to Richmond, Virginia. In the spring of 1992, when Air Wisconsin discontinued its mainte-nance operations in Richmond, Williams was transferred to Dulles and reverted to mechanic status. Air Wisconsin alleges that Williams' dissatisfaction with this change motivated him to falsely claim premium pay. Williams denies this allegation.

chanic. On August 6, 1992, Williams and Union representative Lonnie Sanders attended an initial hearing on this charge. At that hearing, Air Wisconsin terminated Williams.

On August 12, 1992, the Union filed a grievance on Williams' behalf and thereafter appealed the grievance through the several steps provided in the collective bargaining agreement. Each appeal was denied. Williams and Sanders agreed that the grievance should be advanced to arbitration before the three member System Board of Adjustment, consisting of one Union member, one Air Wisconsin representative, and a neutral arbitrator.

At the same time that Williams and the Union were pursuing Williams' grievance, the Union was in the process of renegotiating the collective bargaining agreement with Air Wisconsin. During these contract negotiations, Sanders and Ronald L. Anderson, the general chairman of District 143, repeatedly requested Air Wisconsin to reinstate Williams. Air Wisconsin refused to rehire Williams but agreed to conduct an independent investigation into the matter. A subsequent audit of a 45 day period revealed that Williams had claimed 167.5 hours of unauthorized premium pay for work that he had not performed.

On April 28, 1993, Williams' grievance went to arbitration before the three member panel. Williams was represented by Anderson, Sanders, and IAM chief steward Timothy Regan. In preparation for arbitration, Anderson had asked Williams to prepare a list of witnesses to subpoena for the arbitration. All of the five people listed by Williams were contacted and four testified.[2] Williams also testified. The Union attempted unsuccessfully to limit the arbitration to the events of July 5.[3]

After the three day arbitration hearing, the Union filed a post-hearing brief on Williams' behalf. In a decision dated October 4, 1993, Williams' grievance was denied for the reasons that Williams had claimed premium pay to which he was not entitled from July 4 through July 8 and that the discharge was appropriate and was neither arbitrary, capricious nor discriminatory.

Williams' complaint against Air Wisconsin asserts that he never claimed premium pay to which he was not entitled and that he was fired in retaliation for cooperating with an FAA investigation of Air Wisconsin. According to Williams, in 1991 Air Wisconsin had directed its maintenance personnel to release for service certain aircraft which it knew were unsafe. Williams contends that he "supplied critical information to the [FAA] and otherwise assisted the FAA in its investigation to assure that [an unsafe aircraft] was grounded until it could be repaired and flown safely." (Plaintiff's Response Mem., pp. 1–2). Williams alleges that "Air Wisconsin had an unwritten policy of getting rid of employees who reported safety problems to the FAA." (Plaintiff's Response Mem., p. 2).

Williams' complaint against the Union is that it breached the duty of fair representation by failing to interview and call witnesses whose testimony could have proven that Williams was discharged in retaliation for cooperating with the FAA. Williams also makes the assertion that the Union's representation was deficient because the "whole thrust of the Plaintiff's defense at the arbitration proceeding should have been the fact that he was fired for being a whistle-blower," and the Union did not properly emphasize this theory. (Plaintiff's Response, p. 4).

## DISCUSSION

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The "mere existence of *some* alleged factual dis-

---

**2.** The fifth declined to testify on Williams' behalf and instead testified for Air Wisconsin.

**3.** The Incident Investigation form dated August 4, 1992 referred only to premium pay claimed on July 5, 1992. From this, the Union argued that Williams had been discharged for the events on July 5 only and that the basis for his discharge should not be expanded at arbitration. The arbitrator's decision rejected this argument and took into account the allegations of time card falsification from July 4 through July 8, 1992.

pute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). It is the function of the district court not to weigh the evidence, but to determine whether there is a genuine issue for trial and "there is no issue for trial *unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.*" *Id.* at 249, 106 S.Ct. at 2511 (citations omitted) (emphasis added).

■ This dispute is governed by the Railway Labor Act, 45 U.S.C. §§ 151 *et seq.* ("RLA"). The RLA vests in the System Board of Adjustment exclusive jurisdiction over "minor" disputes such as breach of collective bargaining agreements.[4] *See Hawaiian Airlines, Inc. v. Norris,* —— U.S. ——, ——, 114 S.Ct. 2239, 2244, 129 L.Ed.2d 203 (1994); *Consolidated Rail Corporation v. Railway Labor Executives' Ass'n,* 491 U.S. 299, 303–04, 109 S.Ct. 2477, 2480–81, 105 L.Ed.2d 250 (1989).

■ However, courts have recognized an exception to the exclusive and final jurisdiction of the System Board of Adjustment where the plaintiff brings a so-called "hybrid action" in federal court. In a hybrid action, the plaintiff seeks redress of the employer's breach of the collective bargaining agreement and of a breach by the Union of its duty of fair representation. *See Glover v. St. Louis–San Francisco Ry. Co.,* 393 U.S. 324, 328–29, 89 S.Ct. 548, 550–51, 21 L.Ed.2d 519 (1969); *Bautista v. Pan Am. World Airlines,* 828 F.2d 546, 551–52 (9th Cir.1987). The rationale which forms the basis for this exception is that, if a union's breach of duty "seriously undermines the integrity of the arbitral process, the union's breach also removes the bar of the finality provisions of the

contract." *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 567, 96 S.Ct. 1048, 1058, 47 L.Ed.2d 231 (1976).

■ Under the RLA and the decisions interpreting it in hybrid actions, this court has jurisdiction over Williams' challenge of Air Wisconsin's conduct only if Williams also has a claim against the Union for breach of its duty of fair representation. *See Hardee v. North Carolina Allstate Svc., Inc.,* 537 F.2d 1255, 1258 (4th Cir.1976); *Bautista,* 828 F.2d at 551–52; *Trial v. Atchison, Topeka & Santa Fe Ry. Co.,* 896 F.2d 120, 123 (5th Cir.1990); *Hope v. Continental Baking Co.,* 729 F.Supp. 1556, 1558 (E.D.Va.1990). If there is no genuine issue of material fact as to a breach of this duty by the Union, the court need not consider the remaining claim against the employer. *See Bautista,* 828 F.2d at 551–52. Therefore, before addressing the propriety of Air Wisconsin's actions, it is necessary to consider whether there is a genuine issue of material fact as to the alleged breach of the Union's duty of fair representation.

## A. Union's Duty of Fair Representation

■ The duty of fair representation requires the Union "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 910, 17 L.Ed.2d 842 (1967). A union breaches the duty of fair representation when its conduct is "arbitrary, discriminatory, or in bad faith." *Dement v. Richmond, Fredericksburg & Potomac R. Co.,* 845 F.2d 451, 458 (4th Cir.1988).

■ The judiciary's evaluation of a union's performance "must be highly deferential." *Air Line Pilots Ass'n, Int'l v. O'Neill,* 499 U.S. 65, 78, 111 S.Ct. 1127, 1135, 113 L.Ed.2d 51 (1991). The Fourth Circuit has

---

**4.** The terms "major" and "minor" as used in the RLA are terms of art, not judgments of the importance of the dispute to any party. "Major" disputes concern "rates of pay, rules or working conditions" and "relate to 'the formation of collective bargaining agreements or efforts to secure them'" *Hawaiian Airlines, Inc. v. Norris,* —— U.S. ——, ——, 114 S.Ct. 2239, 2244, 129 L.Ed.2d 203 (1994) (citations omitted). "Minor" disputes "'grow out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions'" and "'involve controversies over the meaning of an existing collective bargaining agreement in a particular fact situation.'" *Id.* Williams alleges that Air Wisconsin breached an existing collective bargaining agreement. Therefore, the dispute in this action is "minor."

held that "simple negligence, ineffectiveness, or poor judgment is insufficient to establish a breach of the union's duty ... Rather, the union's conduct must be '*grossly deficient*' or in *reckless disregard of the member's rights.*" *Ash v. United Parcel Serv., Inc.*, 800 F.2d 409, 411 (4th Cir.1986) (citations omitted) (emphasis added). "Honesty and good faith are demanded of [the union], but as long as there are those ingredients in its conduct, a union has broad discretion in treating competing interests of members of the collective bargaining unit." *Smith v. Local 7898, United Steelworkers of Am.*, 834 F.2d 93, 96 (4th Cir.1987). "When the evidence does not tend to establish the severely deficient union conduct required for a breach of the duty of fair representation, summary judgment is appropriate." *Ash*, 800 F.2d at 412.

 Accordingly, where the union makes use of available grievance and arbitration procedures on the employee's behalf and the employee challenges the union's actions in pursuing the grievance, the district court's focus is on whether "the employer breached the contract and whether there is substantial reason to believe that a union *breach of duty contributed to the erroneous outcome of the contractual proceedings.*" *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 568, 96 S.Ct. 1048, 1058, 47 L.Ed.2d 231 (1976) (emphasis added). *Hines* therefore presents two questions that are pertinent to the issue of breach of duty by the Union: whether the evidence is sufficient to support a finding that the Union breached its duty, and whether there is substantial reason to believe that the breach contributed to the erroneous outcome of the contractual proceedings. *Hardee v. North Carolina Allstate Services, Inc.*, 537 F.2d 1255, 1258 (4th Cir.1976); *Ash*, 800 F.2d at 411.

### 1. Does The Union's Conduct Constitute Breach of Duty?

Williams' argument that the Union breached its duty of fair representation focuses on the purported failure to interview and call certain witnesses and on the Union's failure properly to emphasize the argument that Williams was fired because of his cooperation with the FAA. A review of the record is necessary to put these arguments in perspective.

 Williams consistently has contended that he "never claimed time or pay to which [he] was not entitled." (Williams Dep., p. 1). Nevertheless, Williams now argues that the Union's decision to focus his defense on his innocence was arbitrary, discriminatory or in bad faith. Nothing in the record suggests that the Union's decision to focus on Williams' innocence of the offense charged was motivated by anything other than strategic factors borne of Williams' strenuously asserted claims of innocence. Indeed, by proving that Williams had claimed only that pay to which he was entitled, the Union would have secured certain reversal of his discharge, making unnecessary a speculative sojourn into Air Wisconsin's alleged improper motives. Although, the Union's strategic judgment "need not appear as wise in the glaring light of hindsight," *Smith v. Local 7898, United Steelworkers of Am.*, 834 F.2d 93, 96 (4th Cir.1987), even with hindsight, the Union's strategy here appears neither arbitrary, discriminatory, or in bad faith. That result is not altered because the strategy was unsuccessful.

 Williams also argues that, because his Union representatives were involved in contract negotiations with Air Wisconsin at the time of this arbitration, the Union's strategy was motivated by a desire to stay on Air Wisconsin's good side. This speculation is not supported by a shred of evidence. A party cannot create a genuine issue of material fact "through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

The record establishes that the Union went to arbitration with Air Wisconsin on Williams' behalf, notwithstanding the ongoing contract negotiations. Indeed, the Union even made Williams' reinstatement an issue in those negotiations. This approach secured an independent investigation of the time card fraud allegations. Unfortunately for Williams, the investigation revealed numerous other instances of fraud on his part. Even if a reasonable juror could conclude

from the evidence that the Union's strategy was erroneous, the evidence could not support a finding that the Union's conduct was arbitrary, discriminatory, or in bad faith because "a violation of the duty of fair representation is not made out by proof that the union made a mistake in judgment." *Smith*, 834 F.2d at 96.

■ Williams also challenges the Union's failure to interview and call certain witnesses whose testimony he now contends would have bolstered his assertion that he was fired in retaliation for cooperating with the FAA. Williams has submitted the sworn statements of five individuals who describe what information they would have provided had the Union solicited that information.

This effort is both belated and unavailing. Ron Anderson, the Union member who represented Williams, expressly asked Williams to make a list of witnesses to subpoena for the arbitration. Williams listed five individuals, all five of whom the Union subpoenaed. (Williams Dep., p. 28). Four of these testified for Williams, while the fifth testified for Air Wisconsin. (Williams Dep., p. 28). Of the five witnesses whom Williams now brings forward, only one, James Neitzke, was on the list that Williams prepared at Anderson's request. Neitzke was contacted and did testify. As to the other four, Williams argues that the Union breached its duty by failing to communicate with these individuals whose names Williams had supplied to the Union, but who were not on the list of persons Williams provided in response to the Union's request for the identity of persons to be subpoenaed to testify. It is somewhat curious that in this action Williams now attaches outcome determinative significance to witnesses he did not consider sufficiently important to subpoena to testify at his hearing. This, in fact, suggests that the witnesses now named by Williams became crucially important only because the alleged failure of the Union to communicate with and call them raises a basis for arguing in this action that the Union was deficient. However, what is more important on a motion for summary judgment, a reasonable juror could not find that the Union committed the egregious conduct required for a breach of the duty of fair

representation by failing to communicate with, or call, witnesses whom Williams himself did not include on his witness list when he had the opportunity.

Moreover, an examination of the recently submitted testimony of the new witnesses establishes that Williams has failed to create a genuine issue of material fact that the Union breached its duty. This is because, in each instance, the Union has articulated legitimate reasons for its actions and Williams has not shown those reasons to be pretextual. Therefore, a reasonable jury could not find the Union's actions to have been arbitrary, discriminatory, or in bad faith.

■ Williams first submits the sworn affidavit of Manuel Carvalho who avers that he, like Williams, cooperated with the FAA; that Air Wisconsin pressured employees to release aircrafts that were unsafe; that Air Wisconsin officials had told him that employees who reported safety problems to the FAA would be terminated; and that he tape recorded a conversation in which he was told to get the planes out "or else." (Carvalho Affidavit, p. 1). Williams contends that Carvalho is the "smoking gun" which necessitates a trial. (Plaintiff's Response Mem., p. 6).

The Union responds that Anderson spoke with Carvalho before the hearing and decided not to have him testify for the reason that Anderson concluded that Carvalho would lack credibility because he had recently been fired by Air Wisconsin for time card fraud. Further, Anderson had used Carvalho as a witness in a previous arbitration and, based on that performance, Anderson had concluded that Carvalho was an extremely poor witness who appeared evasive and lacked credibility. Finally, Carvalho's affidavit admits that he did not tell Anderson that he had a tape recording to support his story. These are cogent and persuasive reasons not to have called Carvalho as a witness. Williams presents no evidence suggesting that this explanation is pretextual. From this evidence, a reasonable juror could not find that the Union breached its duty in failing to call Carvalho.

■ Next, Williams presents the declarations of John Francissen and Gerry Martinez, two FAA inspectors who apparently would have testified that Williams cooperated in their investigation of Air Wisconsin. The affidavits of Francissen and Martinez also set forth that they had heard the tape recording to which Carvalho now refers, although neither can recall what was on it. Francissen attaches to his affidavit a document which includes notes on the statement of an Air Wisconsin supervisor, Kevin Reinhalter, taken by another FAA investigator. According to this document, Reinhalter had been told that, if he could not keep his inspectors in line, Air Wisconsin would find someone who could.[5]

For the Union, Anderson explains that he does not recall any mention of these two individuals by Williams.[6] However, Anderson states that he would not have called them in any event because their testimony would have related to the uncontested fact that Williams cooperated with the FAA. Williams did not request that the Union subpoena Francissen and Martinez, nor did he inform the Union that they possessed any information other than the undisputed fact that he had cooperated with the FAA.

■ A juror might conclude that the Union showed poor judgment in failing to communicate with these witnesses, or even that it was negligent in its failure to do so. However, "simple negligence, ineffectiveness or poor judgment is insufficient to establish a breach of the union's duty." *Ash v. United Parcel Serv., Inc.*, 800 F.2d 409, 411 (4th Cir.1986). There is no evidence that the failure to contact Martinez and Francissen was the result of bad faith or discriminatory intent, nor was the Union's conduct so egregious as to be deemed arbitrary. A reasonable jury could not permissibly conclude that the Union breached its duty of fair representation.

■ Williams next challenges the Union's failure to call as a witness Robert Wilcox, who in affidavit states now that he would have testified to Williams' good character and to Williams' ability as a mechanic. Anderson considered Wilcox's testimony to be cumulative and unnecessary because another Union witness had testified at length to Williams' good character. There was no contention that Williams lacked ability to perform as a mechanic. There is no basis from which a jury could infer that the failure to call Wilcox was arbitrary, discriminatory, or in bad faith.

■ Williams also has tendered the declaration of James Neitzke. Although Neitzke testified on Williams' behalf, Neitzke claims to have informed the Union that Giles Hieptas, a key witness for Air Wisconsin, had a bad reputation for truthfulness and that, in his opinion, Hieptas was not worthy of belief. Anderson concedes that he did not question Neitzke about Hieptas' credibility, but he explains that he extensively cross-examined Hieptas himself. The Union's failure to question Neitzke about the particular subject of Hieptas' credibility does not rise to the level of a breach of the Union's duty of fair representation, especially where the Union attacked Hieptas extensively on cross-examination.

Williams' contention that the Union's conduct respecting these five putative witnesses constitutes a breach of duty is based almost exclusively on *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573 (6th Cir.1994). In *Black,* a truck driver was suspended and later discharged for having returned a truck to a depot without reporting that the truck had been damaged. In his grievance proceeding, Black argued that the truck was undamaged when he left it at the terminal and that any damage must have occurred after that time. Black was represented by a union rival with whom he had an "acrimonious history." *Id.* at 577.[7] The union repre-

---

**5.** Incidentally, Reinhalter was Air Wisconsin's designated representative on the arbitration panel.

**6.** On a motion to dismiss, the court takes as true Williams' sworn statement that he did mention these witnesses to the Union.

**7.** The representative held a position of power in the union and Black was an active leader of a dissident group which had threatened the positions of the union leadership. Tensions between Black and union leadership had culminated in a lawsuit in which Black was awarded $40,000 in damages.

sentative refused to travel to Birmingham to interview the mechanic who had repaired the truck and had signed the damage report, the crucial piece of evidence on which the employer rested its case against Black. Had the representative interviewed the mechanic, he would have learned that the mechanic had no knowledge of the condition of the truck when Black left it at the terminal.

. On these facts, the Sixth Circuit held:

Evidence presented at trial was such as to allow the jury to conclude either that the union's conduct, under the circumstances, was so arbitrary and unreasonable as to be beyond the realm of the rational, or that the union was motivated by bad faith or discriminatory animus against Black, an intra-union rival.

*Black*, 15 F.3d at 585 (emphasis added). From this, Williams argues that the Union's failure to interview and call certain witnesses and to properly emphasize the whistle-blower theory are either arbitrary or suggestive of collusion between Air Wisconsin and the Union. (Plaintiff's Response Mem., p. 7).

Turning first to the collusion issue, *Black* did not hold that the union's failure to interview the mechanic was itself "sufficient to allow a jury to conclude that the grievance proceeding against him was the result of collusion between the union and management." (Plaintiff's Response Mem., p. 7). Rather, the court articulated, as the basis for its decision, the substantial evidence of animus between the union representative and Black. This evidence, which, of course, is completely lacking in the present case, created a basis on which the jury could have found that the union representative acted in bad faith and colluded with the employer. Williams admits that he has no reason to believe anyone in the Union bore him any animosity or ill-will. (Williams Dep., pp. 35–36).

Williams also asserts that a jury could infer collusion from the facts that contract negotiations were ongoing at the time of the arbitration and that the Union did not emphasize the theory that Williams had been fired because he cooperated with the FAA. Williams offers no evidence to support a link between those facts. Moreover, the record establishes that the Union even tried to use the contract negotiations as a vehicle to secure reinstatement for Williams. On this record, the decision in *Black* does not require submission of the collusion issue to a jury.

*Black* did hold that, on its facts, the Union's failure to communicate with a witness could be so arbitrary and unreasonable as to constitute a breach of duty. However, *Black* is not applicable to the facts in this action. In *Black*, the union failed, for no apparent reason, to communicate with a key witness on the outcome determinative issue: whether the truck was returned in a damaged condition. The knowledge of that witness was crucial to the employer's ability to prove that Black committed the offense for which he was terminated and conversely to Black's effective defense. That simply is not what happened here.

None of the witnesses now raised by Williams possessed any information respecting whether Williams had claimed premium pay to which he was not entitled. The testimony of each went either to the collateral theory of Air Wisconsin's improper motives or to more general issues, such as character and ability. The Union has articulated reasons for each of its decisions and there is no evidence showing those reasons to be pretextual. Moreover, in perspective of the extensive efforts that the Union actually made on Williams' behalf, the failure to communicate with these peripheral witnesses can be considered neither arbitrary nor capricious nor in bad faith. Therefore, the Union did not breach its duty of fair representation in its handling of these witnesses.

█ As a last ditch effort to prove some egregious misconduct by the Union, Williams argues that the Union did not gather certain documents as early in the proceedings as it should have. As Williams puts it: "[e]ven as to the battle of documents, the union's ill will is clear." (Plaintiff's Response Mem., p. 5). However, Williams presents no evidence that any delay in requesting documents was the result of ill-will, bad faith, discriminatory intent, or even that it was arbitrary. Nor does Williams even contend that the proceedings were prejudiced in any way by the alleged

delay in requesting documents. Therefore, this delay provides no basis from which a jury could infer a breach of duty by the union.

Because the evidence is insufficient to support a finding that the Union breached its duty of fair representation, summary judgment is appropriate as to the Union.

### 2. Is There Substantial Reason To Believe Union's Conduct Contributed To An Erroneous Outcome?

■ Williams has also failed to present evidence that "there is substantial reason to believe that a union breach of duty contributed to the erroneous outcome of the contractual proceedings." *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 568, 96 S.Ct. 1048, 1058, 47 L.Ed.2d 231 (1976); *Hardee v. North Carolina Allstate Services, Inc.,* 537 F.2d 1255, 1258 (4th Cir.1976); *Ash v. United Parcel Serv., Inc.,* 800 F.2d 409, 411 (4th Cir.1986). The plaintiff must show that the alleged misconduct "influenced" the result of the arbitration. *Hardee,* 537 F.2d at 1258. Williams has presented an alternative approach that the Union could have pursued without providing sufficient evidence for a jury to conclude that, had this approach been followed, the result of arbitration would have been different. If Williams' evidence cannot support a finding that there is substantial reason to believe that the challenged conduct contributed to an erroneous outcome or influenced the arbitrator's decision, the "arbitral bar" is not lifted and this court lacks jurisdiction to reconsider the arbitrator's decision. *Id.*

Williams argues that, had the Union properly emphasized the whistle-blower theory, the arbitrators "could have inferred or concluded that Air Wisconsin would lie." (Plaintiff's Response, p. 5). The arbitration award held that Williams was not entitled to the premium pay that he had claimed and that he did not mistakenly believe that he was so entitled. Neither the evidence nor basic logic suggests that a different conclusion would have been reached had the Union focused less on Williams' innocence of that charge and more on the whistle-blower theory of his discharge. The arbitration award is a very

deliberate analysis of the kind of work for which premium pay was appropriate under the collective bargaining agreement and whether the evidence reflected that Williams performed that kind of work on the days in question. Williams has not demonstrated that the approach that he now proposes would have altered this analysis or its outcome.

Had the Union presented evidence that Williams cooperated with the FAA and that Air Wisconsin officials suggested that such employees would be fired, the arbitrators would presumably have been left with two lines of evidence. One would have suggested that Williams was a whistle-blower and that Air Wisconsin had expressed an intention to fire whistle-blowers. The other, however, would still have suggested that Williams committed time card falsification. The only evidence that refutes the facts underlying the decision against Williams on the issue of time card falsification, Williams' own testimony of his innocence, was considered at the arbitration and rejected in light of evidence to the contrary. Williams simply cannot prove that he would have been exonerated had the Union followed the approach that he now advocates.

### B. Air Wisconsin and the Alleged Breach of Collective Bargaining Agreement

■ Because summary judgment is appropriate as to the complaint against the Union, the arbitration decision in favor of Air Wisconsin is final and this court lacks jurisdiction to reconsider it. *Hardee v. North Carolina Allstate Services, Inc.,* 537 F.2d 1255, 1258 (4th Cir.1976); *Bautista v. Pan American World Airlines, Inc.,* 828 F.2d 546, 551–52 (9th Cir.1987); *Trial v. Atchison, Topeka & Santa Fe Ry. Co.,* 896 F.2d 120, 123 (5th Cir.1990); *Hope v. Continental Baking Co.,* 729 F.Supp. 1556, 1558 (E.D.Va. 1990). Therefore, Air Wisconsin's motion for summary judgment is granted as well.

### CONCLUSION

Williams has failed to create a genuine issue of material fact that the Union breached its duty of fair representation or that the conduct contributed to an erroneous outcome

of the proceedings. Therefore, the motion for summary judgment by IAM and District 143 is granted.

Because summary judgment is appropriate as to the Union, this court lacks jurisdiction over the claim against Air Wisconsin. Therefore, the motion for summary judgment by Air Wisconsin is also granted.

The action is therefore dismissed with prejudice.

It is so ORDERED.