**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JAMES T. BENSON,
<u>Plaintiff-Appellant,</u>

v.

No. 94-2385

COMMUNICATIONS WORKERS OF
AMERICA; CONTEL OF VIRGINIA,
INCORPORATED, d/b/a GTE Virginia,
<u>Defendants-Appellees.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
John A. MacKenzie, Senior District Judge.
(CA-93-552)

Argued: June 7, 1995

Decided: March 25, 1996

Before RUSSELL and MOTZ, Circuit Judges, and FABER,
United States District Judge for the Southern District
of West Virginia, sitting by designation.

_____

Affirmed by unpublished opinion. Judge Faber wrote the opinion, in
which Judge Russell and Judge Motz joined.

_____

**COUNSEL**

**ARGUED:** Edwin Vieira, Jr., Manassas, Virginia, for Appellant.
James Bryan Coppess, Washington, D.C., for Appellees. **ON BRIEF:**
Hugh L. Reilly, NATIONAL RIGHT TO WORK LEGAL DEFENSE

FOUNDATION, Springfield, Virginia, for Appellant. Laurence Gold, Washington, D.C.; Gerard C. Boyle, Washington, D.C., for Appellee Communication Workers; Gerald C. Canaan, II, O'BRIEN & ASSO-CIATES, Richmond, Virginia, for Appellee Contel.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

FABER, District Judge:

I. <u>STATEMENT OF THE CASE</u>

This is an appeal by plaintiff, James T. Benson ("Benson"), from the district court's grant of summary judgment to defendants, Communications Workers of America ("CWA") and Contel of Virginia, Inc. ("Contel"). The district court referred the matter to a magistrate judge and granted summary judgment after it considered Benson's objections to the magistrate judge's Report and Recommendations. Benson, an employee of Contel, brought this action against his union, CWA, for breach of its duty of fair representation, and derivatively against Contel\* for breach of its collective bargaining agreement with CWA. In the alternative, Benson contended that, if CWA did not breach its duty of fair representation, § 9(a) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 159(a), is unconstitutional under the First and Fifth Amendments.

_____

\*By stipulated consent order entered below, Contel agreed to be bound by the terms of any order or injunction issued by the district court and was relieved of its obligation to appear further in the action. (JA at 37.) Similarly, the Clerk of this court was informed that Contel would not file an appellate brief and duly notified Contel it would not be heard at oral argument. (JA at 86.)

2

II. <u>STATEMENT OF RELEVANT FACTS</u>

The material facts are not in dispute. At all relevant times, Contel has recognized CWA as the NLRA § 9(a) "exclusive representative" for a bargaining unit of employees which included Benson and Barbara Kirker ("Kirker"). Kirker is not a party to this action. Contel and CWA were parties to a collective bargaining agreement (the "agreement"), which set forth procedures Contel was required to follow in selecting employees for job assignments and established a grievance procedure for resolving disputes.

In January of 1990, Contel posted a "Notice of Job Opening" for a service technician job. After reviewing the applications submitted, Contel narrowed the field of candidates to four people. Among the four were Benson and Kirker. At the time the vacancy was posted, Kirker exceeded Benson in seniority, having worked for Contel more than six years. Benson had been a Contel employee less than two years. Contel found, and the record demonstrates, that both Benson and Kirker were skilled employees fully qualified for the job. However, Benson was selected because he was found to be better qualified for the position than Kirker. This decision was based upon Benson's extensive previous experience as a supervisor with another employer and in construction. Contel determined that Benson was more impressive during the interviews and had a better background for the job.

CWA filed a grievance, challenging Contel's choice of Benson on the ground that the agreement required selection of the "best qualified senior applicant." Since Kirker had seniority and was qualified, CWA contended, the agreement required that she be given the position. The union's grievance was submitted to binding arbitration pursuant to the agreement. CWA's position was based, in part, upon a 1990 decision by arbitrator Robert Ables which interpreted the precise language of the agreement in dispute. Arbitrator Ables concluded that "[T]he union employee needs only to show he or she is qualified for the position to be entitled to apply seniority as priority for the job." (JA at 140.)

Accordingly, at the grievance hearing, CWA contended that Kirker must be given the job even if Benson were deemed to have comparatively superior qualifications. Additionally, the union offered evi-

dence to show that Kirker was as qualified as Benson, or nearly so. Contel, on the other hand, argued that the agreement required them to use a hybrid "qualifications/seniority" standard and weigh both seniority and relative qualifications in making the selection. Contel presented evidence to show that Benson was more qualified than Kirker for the job.

CWA neither notified Benson of the grievance hearing, nor asked for his participation or input. Benson was made aware of Contel's position, however, and helped Contel prepare its case by providing them with relevant information, such as his prior work experience. Benson was not called as a witness by either party at the arbitration hearing.

The arbitrator concluded that Contel had failed to comply with its own Notice of Job Opening by adding job requirements during the interviews and by giving controlling weight to those requirements, which were not included in the notice. The arbitrator found that Benson was given the highest rating for the job because of his supervisory/general administrative experience, in spite of the fact that these factors were not mentioned in the Notice of Job Opening. The arbitrator sustained the union's grievance, the position was given to Kirker, and Benson was demoted.

III. THE STANDARD OF REVIEW

We review the district court's grant of summary judgment de novo. Ramos v. Southern Md. Elec. Coop., 996 F.2d 52, 53 (4th Cir. 1993). Summary judgment under Federal Rule of Civil Procedure 56(c) is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." See Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). In making this determination, we view the evidence in the light most favorable to the non-moving party, granting that party the benefit of all reasonable inferences. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Conkwright v. Westinghouse Elec. Corp., 933 F.2d 231, 233 (4th Cir. 1991)."If, however, `the evidence is so one-sided that one party must prevail as a matter of law,' we must affirm the grant of summary judgment in that party's favor." O'Connor v. Consolidated Coin Caterers Corp., 56 F.3d 542, 545

4

(4th Cir. 1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)).

IV. DISCUSSION

A. The Duty of Fair Representation

Benson first contends that CWA breached its duty of fair representation in the following three particulars: (1) by initially adopting a strict seniority theory in its handling of the Kirker grievance; (2) by then abandoning its strict seniority theory and asserting in the arbitration that Kirker was as qualified or nearly as qualified as Benson for the service technician position; and (3) by denying Benson notice and an opportunity to participate in the grievance-arbitration process.

Development of the doctrine of fair representation began with Steele v. Louisville & Nashville R.R., 323 U.S. 192 (1944), a case involving unions certified as exclusive bargaining representatives under the Railway Labor Act. The doctrine was extended to unions certified under the NLRA in Ford Motor Co. v. Huffman, 345 U.S. 330 (1953). Under the fair representation doctrine, a union, as the exclusive bargaining representative of a group of employees, has the duty to represent fairly all of its members, both in collective bargaining and in the enforcement and implementation of any collective bargaining agreement which results. Vaca v. Sipes , 386 U.S. 171, 177 (1966). The Supreme Court, in Air Line Pilots Ass'n Int'l v. O'Neill, 499 U.S. 65 (1991), established a tripartite standard for determining whether, in a given situation, the duty of fair representation has been breached. Under this standard, a union breaches its duty of fair representation if its actions are arbitrary, discriminatory or in bad faith. Id. at 67.

Prior cases have recognized the inevitability of disputes between interests of the union as a whole and interests of individual members. It is well-established that the interests of individual members may sometimes be compromised for the sake of the collective entity. "[T]he complete satisfaction of all who are represented is hardly to be expected." NLRB v. Allis-Chalmers Mfg. Co. , 388 U.S. 175, 180 (1967) (quoting Ford Motor Co. v. Huffman, 345 U.S. at 338). Nevertheless, when conflicts arise, the union must make an honest effort to

5

serve the interests of all its members. Therefore, when a union takes a position on behalf of one or more of its members which is necessarily antagonistic to another member, it must act honestly and in good faith. Humphrey v. Moore, 375 U.S. 335 (1964). However, a union is accorded considerable discretion in dealing with grievance matters and it may consider the interests of all of its members when deciding how it will deal with the claim of an individual employee. Garcia v. Zenith Elec. Corp., 58 F.3d 1171, 1176 (7th Cir. 1995); Seymour v. Olin Corp., 666 F.2d 202, 208 (5th Cir. 1982). A court should not substitute its judgment for that of the union "even if, with the benefit of hindsight, it appears that the union could have made a better call." Ooley v. Schwitzer Div. Household Mfg. Inc., 961 F.2d 1293, 1302 (7th Cir.), cert. denied, 506 U.S. 872 (1992). So long as the union acts in good faith, a court should not intercede on behalf of a disgruntled member. Barr v. United Parcel Service, 868 F.2d 36 (2d Cir.) cert. denied, 493 U.S. 975 (1989).

Applying these principles to Benson's claim, this court cannot conclude that CWA's duty of fair representation has been breached. The union's actions were neither arbitrary, discriminatory nor in bad faith. The Magistrate Judge found and the district court concluded that the union relied upon an earlier interpretation by an arbitrator of the meaning of "best qualified applicant" which emphasized seniority. Whether that interpretation was binding or not, the union's reliance upon it was certainly not arbitrary, discriminatory, nor in bad faith. A union may handle a grievance in a particular manner for the purpose of benefitting the membership at large. Griffin v. International Union, United Auto., Aerospace and Agr. Implement Workers of America, 469 F.2d 181, 183 (4th Cir. 1972). Seniority is a valid, non-arbitrary means of allocating union benefits. Kushto v. Brotherhood of Railway, Airline & Steamship Clerks, 818 F.2d 290, 293 (4th Cir. 1987). This conclusion is not adversely impacted by the fact that, in the grievance procedure, CWA went beyond a pure seniority position and bolstered its case with evidence as to the relative qualifications of Kirker as opposed to Benson.

We now turn to Benson's argument that the duty of fair representation was breached by CWA's failure to give him notice of the grievance procedure and an opportunity to participate in it. We find no requirement that notice and an opportunity to participate must be

6

given every time presentation of a grievance may adversely affect a member of the bargaining unit. Upon all the facts and circumstances of a given case, the failure to give notice may be a component of a breach of the duty of fair representation; but, taken by itself, the failure to give notice does not constitute breach of such duty. Thompson v. International Ass'n of Machinists, 258 F. Supp. 235, 239 (E.D. Va. 1966). Thus, the court must balance the failure to give notice of the grievance procedure with other relevant factors in each case. Here, Benson was not prejudiced by the lack of notice and an opportunity to participate in the grievance proceeding. As the district court observed, the arbitrator "was fully aware of Benson's qualifications. Benson's proffered testimony would not have impacted the arbitrator's decision based upon his interpretation of the Agreement." (JA at 81.)

Furthermore, it has been held that, in matters involving interpretation of a collective bargaining agreement, the union is not required to offer adversely impacted members notice and an opportunity to participate. Evangelista v. Inlandboatmen's Union of Pacific, 777 F.2d 1390, 1397 (9th Cir. 1985). The promotion bypass grievance advanced by CWA on behalf of Kirker was essentially an issue of contract interpretation. This issue was whether the contract language "best qualified senior applicant" required Contel to give the job to the qualified applicant with the most seniority. As the issue before the arbitrator was a matter of contract interpretation, the failure to accord Benson notice and an opportunity to participate in the grievance proceeding did not violate CWA's duty of fair representation.

B. Alleged Erroneous Outcome of the Grievance Proceeding

Even if CWA had breached its duty of fair representation, a proposition we reject, the court must not upset the arbitrator's decision unless, as a result of the union's breach, that decision was erroneous. Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 568 (1976); Ash v. United Parcel Service, Inc., 800 F.2d 409, 411 (4th Cir. 1986) (quoting Hardee v. N.C. Allstate Ins. Services, Inc., 537 F.2d 1255, 1258 (4th Cir. 1976)).

Benson argues that, as a result of his failure to be given notice and an opportunity to participate, the outcome of the arbitration was erro-

7

neous. Had he been present, Benson contends, he would have testified or argued that his experience with a prior employer met the requirements of the job as posted and gave him qualifications superior to Kirker's. We do not find this argument persuasive. Benson actively assisted Contel in preparation for the arbitration hearing. (JA at 315-18.) Additionally, in defending its decision to select Benson for the job, Contel placed before the arbitrator the relevant facts concerning Benson's prior job experience and qualifications. In fact, Benson testified at his deposition in this case that he provided Contel with everything he could think of to aid in preparation of the case and he knew the company was going to defend its decision to select him for the position. (JA at 325-26.) Thus, the arbitrator had all relevant information before him, and we find no evidence that the outcome of the arbitration was erroneous.

C. Constitutionality of NLRA § 9 as Applied to Benson

Lastly, Benson maintains that if CWA did not breach its duty of fair representation upon the facts of this case, NLRA § 9 as applied to him is unconstitutional. The absence of a requirement of notice and an opportunity to be heard under the statute, he argues, renders it repugnant to the First Amendment and to the Due Process Clause of the Fifth Amendment to the Constitution of the United States.

The validity of Benson's constitutional claims depends upon the existence of state action. The First Amendment and the Due Process Clause protect "individuals only from governmental, not private, action." Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 930 (1982); Hudgens v. NLRB, 424 U.S. 507, 513 (1976). In Bures v. Houston Symphony Soc., 503 F.2d 842, 843 (5th Cir. 1974), the court held that a union, in handling a grievance, is not required to employ procedures which satisfy the constitutional guarantee of due process because "a grievance procedure agreement between union and private employer involves no state or federal action . . . ." Since the law is clear that the actions of the union do not constitute state action, Benson's constitutional argument must fail.

Additionally, the Supreme Court has found that the duty of fair representation serves as "a bulwark to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the pro-

8

visions of federal labor law." <u>Vaca v. Sipes</u> , 386 U.S. at 182. This protection, the Supreme Court indicated, is sufficient to avoid the "grave constitutional problems" which would otherwise be raised by the statutory grant of power to a union to act as the exclusive agent of its members. <u>Id.</u> Accordingly, in the labor environment, the duty of fair representation, which we have concluded was not breached here, functions as a substitute for traditional due process protection.

V. <u>CONCLUSION</u>

For all of the foregoing reasons, we conclude that the district court did not err in granting CWA's motion for summary judgment and denying Benson's similar motion. Therefore, the decision of the district court is

<u>AFFIRMED</u>.

9